## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Christopher Chin, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> The Tile Shop, LLC, <br><br> Defendant. | Case No. 13-cv-2969 (SRN/JSM) <br><br><br> **MEMORANDUM OPINION AND ORDER** |

J. Derek Braziel, Lee & Braziel, LLP, 1801 N. Lamar St., Suite 325, Dallas, TX 75202; Rowdy B. Meeks, Rowdy Meeks Legal Group, LLC, 10601 Mission Road, Suite 100, Leawood, KS 66206; Paul J. Lukas and Michele R. Fisher, Nichols Kaster, PLLP, 80 South 8th Street, Suite 4600, Minneapolis, MN 55402-2242, for Plaintiff.

Joseph M. Sokolowski, Lindsay J. Sokolowski, Pamela Abbate-Dattilo, Fredrikson & Byron, PA, 200 South 6th Street, Suite 4000, Minneapolis, MN 55402-1425, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff's Motion for FLSA Conditional Certification and Judicial Notice [Doc. No. 23]. For the reasons that follow, the Court grants Plaintiff's Motion.

## I.    BACKGROUND

On October 29, 2013, Plaintiff Christopher Chin ("Plaintiff" or "Chin") filed this action against Defendant The Tile Shop ("Defendant" or "The Tile Shop") to recover alleged unpaid minimum wage and overtime on behalf of himself and others similarly situated pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

"The Tile Shop is a leading specialty retailer of manufactured and natural stone tiles, setting and maintenance materials, and related accessories in the United States."  (Compl. ¶ 1 [Doc. No. 1].)  As of May 2, 2014, Defendant operated 90 retail stores in 28 states. (Def.'s Mem. in Opp'n at 2 [Doc. No. 31].)  The Tile Shop is headquartered in Plymouth, MN.  (Id.)

Plaintiff was employed as a Sales Associate and as an Assistant Store Manager from approximately February 15, 2013 through August 15, 2013 at The Tile Shop in Sterling, Virginia.  (Compl. ¶ 4 [Doc. No. 1].)  According to the The Tile Shop's website, Sales Associates, who are also known as Manager Trainees, are responsible for "[s]elling tile and related products to exceed customer expectations" and "restocking store inventory."  (Id. ¶ 13.)  Chin alleges that Sales Associates do not regularly supervise the work of two or more employees, nor do they "exercise discretion and independent judgment as to matters of significance or perform office work related to The Tile Shop's general business operations."  (Id. ¶ 22.)  Additionally, Chin alleges that Sales Associates "have no advanced knowledge in a field of science or learning which requires specialized instruction which is required to perform their jobs."  (Id.)

Like Sales Associates, Assistant Store Managers are also responsible for "selling tile and related products."  (See, e.g., Lessner Decl. ¶ 8; Reliford Decl. ¶ 7; Cornell Decl. ¶ 7; Chin Decl. ¶ 7 [Doc. No. 26-2].)  However, Assistant Store Managers also perform other non-sales related tasks such as "loading and filling customer orders, performing inventory, and cleaning the store and bathrooms." (Id.)

Sales Associate/Manager Trainee employees are expected to work evenings and weekends, for a total of 45-55 hours per week.  (Compl. ¶ 13 [Doc. No. 1].)  Plaintiff alleges that he and other Sales Associates and Assistant Store Managers "routinely worked more than 40 hours in [a] work week."  (Id. ¶ 17.)  In fact, Chin claims that he and other Sales Associates would sometimes work more than 60 hours a week.  (Id.)  The exact number of hours each employee works is tracked by The Tile Shop on "bi-monthly check stubs."  (Id.)

Chin not only contends that all Sales Associates employed by Defendant nationwide are similarly situated, but he also asserts that all Sales Associates are similarly situated to all Assistant Store Managers, nationwide, because they share common job duties, job descriptions, and pay.  (Id. ¶ 25.)  As to proof of similarity among Sales Associates across the country, Plaintiff presents evidence that The Tile Shop uses the same job posting to advertise for the Sales Associate/Manager Trainee job position nationwide.  (Id. ¶ 26.)  As to evidence of uniformity among Sales Associates and Assistant Store Managers, Chin points to declarations by former employees who have opted into this suit and who previously served as both Sales Associates and Assistant Store Managers.  (Pl.'s Mem., Ex. 2 [Doc. No. 26-2].)  The four other employees, April Cornell, Carlos Galeas, Donald Lessner, and Antonio Reliford, collectively worked in at least six stores in at least three states.  (Lessner Decl.; Reliford Decl.; Cornell Decl.; Galeas Decl. [Doc. No. 26-2].)  In these declarations, the employees allege that the duties they performed as Sales Associates were nearly identical to those performed when they were Assistant Store Managers.  (Id.)

3

Five additional former Store managers who worked in at least 15 stores in at least five states have also submitted supporting declarations.  (Pl.'s Mem., Ex. 3 [Doc. No. 27].)  Plaintiff contends that these declarations, coupled with Plaintiff's Complaint and Defendant's nationwide pay plans and job postings, "establish that Sales Associates and pre-2012 Assistant Store Managers are similarly situated because they have the same job duties and are paid pursuant to the same pay plan throughout the United States."  (Pl.'s Mem. at 4 [Doc. No. 26].)  However, at least one distinction between Sales Associates and Assistant Store Managers exists.  In addition to working in a sales capacity, Assistant Store Managers are also responsible for helping the Store Manager supervise the retail store.  (Pl.'s Mem., Ex. 3 ¶¶ 7-8 [Doc. No. 27]; Behrman Aff. ¶ 3 [Doc. No. 32].)

Sales Associates and Assistant Store Managers not only have similar job duties, but they also are compensated in the same manner.  Leigh Behrman, Defendant's Vice President of Human Resources and Compliance, explains that "Assistant Managers and [S]ales [A]ssociates are compensated primarily by commission."  (Behrman Aff. ¶ 4 [Doc. No. 32].)  According to Carl Randazzo, Defendant's Senior Vice President of Retail, employees' commissions are based on the gross profit of the sales orders employees procure, once the customer has paid in full.  (Randazzo Aff. ¶¶ 3, 15 [Doc. No. 31].)  However, if a customer returns product, The Tile Shop deducts from the employee's next paycheck to compensate for the loss in profit from the return.  (Id. ¶ 16.)  Chin alleges that "The Tile Shop frustrated the ability of its Sales Associates and Assistant Store Managers to sell products and thus earn commissions by requiring them

to perform many non-sales related [administrative and cleaning] tasks." (Compl. ¶ 20 [Doc. No. 1].)

In addition to commission, Assistant Store Managers and Sales Associates are paid a bi-monthly draw or subsidy. Before 2012, regardless of the number of hours an employee worked, Sales Associates' and Assistant Store Managers' bi-monthly draw was $866.67. (Id. ¶ 15.) After 2012, regardless of the number of hours an employee worked, Sales Associates' and Assistant Store Managers' bi-monthly draw was $1,000. (Id. ¶ 16.) Although the monthly draw is ostensibly consistent, The Tile Shop deducts future compensation in excess of the draw amount if a Sales Associate or Assistant Store Manager receives a commission amount during a period that is less than the draw amount for that period.[1] (Behrman Aff. ¶ 4 [Doc. No. 32].) Although Assistant Store Managers have the same "recoverable draw against commissions" as Sales Associates, Assistant Store Managers are also eligible for bonuses based upon store performance. (Compl. ¶ 18 [Doc. No. 1].)

Pursuant to the FLSA, Defendant is considered an "employer," and Plaintiff and all Sales Associates and Assistant Store Managers were "employees" of The Tile Shop. See 29 U.S.C. § 203(d), (e). Therefore, The Tile Shop is subject to the FLSA overtime provisions. The FLSA requires that Defendant compensate its employees at a rate not less than minimum wage for the first 40 hours worked in a workweek. 29 U.S.C. §

---

[1]     As Defendant explains, "if a sales associate receives $900 in commission payments during a particular pay period, the employee would still receive a bi-monthly draw of $1,000. However, a $100 deficit would be carried over and subtracted from any amount paid in excess of $1,000 in subsequent pay periods until repaid in full." (Def.'s Mem. in Opp'n at 3 [Doc. No. 31].)

207(a)(1).  Throughout the time that Chin worked at The Tile Shop, the federal minimum wage was $7.25.  See 29 U.S.C. § 206.  For every hour worked in addition to the 40 hour workweek, the FLSA requires Defendant to pay its employees "one and one-half times the regular rate at which [they] are employed."  See 29 U.S.C. § 207(a)(1).  A rate of one and one-half times the applicable minimum wage is $10.88.

Section 7 of the FLSA exempts certain categories of employees from overtime pay obligations.  See 29 U.S.C. § 207.  For example, according to section 7(i) of the FLSA, employees are not entitled to overtime if: (1) they are employed by a retail sales establishment; (2) more than half their total earnings in a representative period consist of commissions; and (3) their regular rate of pay exceeds one and one-half times the applicable minimum wage.  29 U.S.C. § 207(i).  However, Plaintiff contends that none of the FLSA exemptions apply to him or other Sales Associates or Assistant Store Managers.  (Compl. ¶ 37 [Doc. No. 1].)  Chin claims that The Tile Shop unlawfully misclassified Plaintiff and other Sales Associates and Assistant Store Managers as exempt.  (Id. ¶ 21.)  Due to this misclassification, Plaintiff alleges that Defendant failed to pay these employees minimum wage and overtime premiums.  (Id. ¶ 21.)  During the hearing, Defense counsel argued that Plaintiff failed to specifically allege that he and other Assistant Store Managers and Sales Associates "were paid less than $10.88."  (Hr'g Tr. 4, May 23, 2014.)  The Court disagrees.  Although Chin does not specifically state that he and other members of the putative class were paid less than $10.88 per hour, it is clear that Plaintiff's Complaint incorporates this allegation.  (See Compl. ¶ 23 (alleging that "The Tile Shop Associates and Assistant Store Managers do not qualify for the

FLSA Section 7(i) exemption because The Tile Shop does not pay them 1.5 times the applicable minimum wage for every hour worked during each work week") [Doc. No. 1].)

Plaintiff brings his FLSA claims as an opt-in action pursuant to 29 U.S.C. § 216(b) on behalf of: (1) Sales Associates, Manager Trainees, Sales Representatives, and other employees holding comparable positions who were employed by The Tile Shop nationwide within the three years preceding this action ("Sales Associate Collective Action Members"); and (2) Assistant Store Managers and others holding comparable positions with different titles who were employed by The Tile Shop nationwide within the three years preceding this action and who were paid a bi-monthly subsidy of $866.67 ("Assistant Store Manager Collective Action Members"). [2]  (Id. ¶ 9; Pl.'s Mem. at 4 [Doc. No. 26].)

In Chin's Complaint, he states two counts against Defendant: (1) Count I is his FLSA collective action overtime claim, (Compl. ¶ 30 [Doc. No. 1]); and (2) Count II is his FLSA collective action minimum wage claim, (id. ¶ 44).  Both counts are opt-in collective actions pursuant to 29 U.S.C. § 216(b) on behalf of all others similarly situated. (Id. ¶¶ 30, 44.)

---

[2]     Plaintiff does not challenge the pay policy for Assistant Store Managers whose bi-monthly subsidy increased to $1,000 in January 2012.  (Pl.'s Mem. at 8 [Doc. No. 26].) Chin explains that he does not seek to challenge the pay policy for this group of employees because when Defendant raised the bi-monthly subsidy to $1,000 for Assistant Store Managers in January 2012, these employees received a weekly wage that barely met the minimum wage threshold.  (Id.)

## II.    DISCUSSION

### A.  Conditional Class Certification

The FLSA authorizes employees to bring a collective action against employers to recover unpaid overtime.  29 U.S.C. § 216(b).  Unlike a Rule 23 class action, under the FLSA, no employee shall be a party to a collective action unless "he gives consent in writing to become such a party and such consent is filed in the court in which such action is brought."  Jennings v. Cellico Partnership, No. 12-cv-00293 (SRN/TNL), 2012 WL 2568146, at *3 (D. Minn. July 2, 2012) (citing Smith v. Heartland Auto. Servs., Inc., 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005)).  Courts have discretion, in "appropriate cases," to facilitate the opt-in process by conditionally certifying a class and authorizing court-supervised notice to potential opt-in plaintiffs.  Saleen v. Waste Mgmt., Inc., 649 F. Supp. 2d 937, 939 (D. Minn. 2009) (quoting Hoffman–La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)).

To proceed with a collective action, plaintiffs must demonstrate that they are similarly situated to the proposed FLSA class.  Brennan v. Qwest Communications Int'l, Inc., No. 07-cv-2024 (ADM/JSM), 2008 WL 819773, at *3 (D. Minn. Mar. 25, 2008). Determining whether Plaintiffs are similarly situated to the proposed class requires a two-step inquiry.  Burch v. Qwest Communications Int'l, Inc., 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (citations and quotations omitted).  First, the court determines whether the class should be conditionally certified for notification and discovery purposes.  Id.  The plaintiffs need only establish at that time a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan.  Id.  Determination

of class status at the notice stage is granted liberally because the court has minimal

evidence for analyzing the class.  Ray v. Motel 6 Operating, Ltd. Partnership, No. 3–95–

828 (RHK), 1996 WL 938231, at *2 (D. Minn. Mar. 18, 1996).

After discovery is completed, the court conducts an inquiry into several factors if

there is a motion to decertify the class.  Burch, 500 F. Supp. 2d at 1186.  These factors

include: (1) the extent and consequences of disparate factual and employment settings of

the individual plaintiffs; (2) the various defenses available to the defendant that appear to

be individual to each plaintiff; and (3) other fairness and procedural considerations.  Id.

If the class is decertified, opt-in class members are dismissed without prejudice and the

case proceeds only in the putative class representatives' individual capacities.  Keef v.

M.A. Mortenson Co., No. 07-cv-3915 (JMR/FLN), 2008 WL 3166302, at *2 (D. Minn.

Aug. 4, 2008).

Since the parties here have not completed discovery, this case is at the first step of

the two-step inquiry.[3]  Thus, the Court must only determine whether Plaintiff has come

forward with evidence establishing a colorable basis that the putative class members are

victims of a single decision, policy, or plan.  Frank v. Gold'n Plump Poultry, Inc., No. 04-

cv-1018 (JNE/RLE), 2005 WL 2240336, at *2 (D. Minn. Sept. 14, 2005).  At this stage,

courts usually rely on the pleadings and any affidavits submitted by the plaintiff to

determine whether to grant conditional certification.  See Parker v. Rowland Express,

---

[3]     "Even in cases where the parties have engaged in some discovery, plaintiffs must show only a colorable basis to achieve conditional certification under the first stage of review."  Lyons v. Ameriprise Fin., Inc., No. 10-cv-503 (RHK/JJK), 2010 WL 3733565, at *3 (D. Minn. Sept. 20, 2010) (citations and quotation omitted).

Inc., 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007) (citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001).  However, the Court "does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties[.]"  Brennan, 2008 WL 819773, at *3 (citation omitted).

### B.  Similarly Situated Putative Class Members

The term "similarly situated" is not defined by the FLSA, but it "typically requires a showing that an employer's commonly applied decision, policy, or plan similarly affects the potential class members, and inflicts a common injury on plaintiffs and the putative class."  Keef, 2008 WL 3166302, at *2 (citation and quotation omitted).  Determining whether Plaintiff's showing meets this standard "lies within the Court's sound discretion."  Id.

Plaintiff asserts that members of the proposed class are similarly situated because: "(1) they perform the same job duties nationwide, (2) Defendant pays them pursuant to the same pay plan nationwide, and (3) Defendant subjected them to a nationwide policy and/or practice of misclassifying them as exempt which denied them minimum wage and overtime pay."  (Pl.'s Mem. at 12 [Doc. No. 26].)

The employee declarations and additional exhibits Plaintiff submitted provide a colorable basis for the Court to conclude that (1) Sales Associates and Assistant Store Managers are similarly situated because of the uniformity of their job duties, and (2) Defendant's common pay policy inflicts a common injury on the putative class. Therefore, the Court finds that Chin adequately demonstrates that the members of the class are similarly situated.  See Parker, 492 F. Supp. 2d at 1164 (explaining that courts

usually rely on a plaintiff's pleadings and affidavits to determine whether to grant

conditional certification at first stage of the proceedings).  Chin's contention that the

Sales Associate Collective Action Members are similarly situated, nationwide, is

corroborated by Defendant's national job postings.  (Pl.'s Mem., Ex. 5 [Doc. No. 28].)

All of the Sales Associate/Manager Trainee job postings include an identical overview of

the position, list of responsibilities, and list of preferred qualifications, despite the

difference in store location.  (Id.)  "Although job descriptions and titles are not directly

relevant to the Court's ultimate assessment of whether a particular employee is exempt,

they do provide an evidentiary basis to establish similarity at this stage."  In re RBC Dain

Rauscher Overtime Litigation, 703 F. Supp. 2d 910, 964-65 (D. Minn. 2010) (granting

conditional certification based partially on job descriptions and titles that indicated that

the putative class members were similarly situated).

Plaintiff's contention that the Sales Associate Collective Action Members and the

Assistant Store Manager Collective Action Members are similarly situated  is

corroborated by employee declarations.  Chin and three other former employees of The

Tile Shop allege that their job responsibilities as Assistant Store Managers were

substantially the same compared to when they worked as Sales Associates.  (Lessner

Decl. ¶ 8; Reliford Decl. ¶ 7; Cornell Decl. ¶ 7; Chin Decl. ¶ 7 [Doc. No. 26-2].)  As both

Assistant Store Managers and Sales Associates their main duties were to sell tile and

related products to customers.  (Lessner Decl. ¶¶ 3, 8; Reliford Decl. ¶¶ 3, 7; Cornell

Decl. ¶¶ 3, 7; Chin Decl. ¶¶ 3, 7 [Doc. No. 26-2].)

Furthermore, the declarants allege that Defendant routinely failed to pay the employees minimum wage and overtime.  (Id.)   The national uniformity among Sales Associates and Assistant Store Managers is evident because collectively, these individuals worked in at least six stores in at least three states.  (Pl.'s Mem., Ex. 2 [Doc. No. 26-2].)  Additionally, five former Store Managers who worked in at least fifteen stores in at least five states also submitted supporting declarations, alleging that Assistant Store Managers and Sales Associates had similar job responsibilities and were not always paid minimum wage or overtime based on Defendant's Salesperson Pay Plan.  (Pl.'s Mem., Ex. 3 [Doc. No. 27].)

As to common injury from a common policy, Chin's assertion that Defendant pays the class members according to the same pay plan nationwide is further corroborated by The Tile Shop's Welcome Packet, which details the nationwide salesperson pay plans. (Pl.'s Mem., Ex. 4 [Doc. No. 27-1].)  Thus, Chin establishes a colorable basis for his claim that the putative class members were the victims of a single decision, policy, or plan.  See Burch, 500 F. Supp. 2d at 1186; Frank, 2005 WL 2240336, at *2.  Defendant does not oppose Chin's contention that members of the proposed class are similarly situated.  Therefore, as a result of the commonalties alleged in the declarations and demonstrated in The Tile Shop's materials, the Court finds that the Sales Associate Collective Action Members and the Assistant Store Manager Collective Action Members are similarly situated.

The Court notes that, during the hearing, Defense counsel requested that if the Court grants conditional certification, that it be limited to the Virginia and Lexington,

Kentucky store locations.  (Hr'g Tr. 12.)  However, the Court finds no reason to limit the certification geographically.  All Assistant Store Managers and Sales Associates are subject to the same pay policy, which is applied uniformly across the country, and all putative class members perform similar job duties and responsibilities.

### C. Defendant's Arguments

Instead of arguing that the members of the proposed class are not similarly situated, Defendant contends that the Court should deny conditional certification because: (1) Plaintiff and the opt-ins are exempt under the FLSA retail sales exemption (Def.'s Mem. in Opp'n at 1 [Doc. No. 31]); (2) neither Plaintiff nor the opt-ins are aggrieved parties under the FLSA (id.); (3) Plaintiff has failed to demonstrate potential class members' substantial interest in this lawsuit (id.); and (4) this lawsuit is unmanageable given the number of individualized inquiries that are necessary (Hr'g Tr. 4-7).  Below, the Court addresses each of Defendant's arguments in turn.

### 1. Retail Sales Exemption

The Tile Shop argues that the Court should not certify Plaintiff's conditional class because the putative class members are subject to the FLSA's retail sales exemption. (Def.'s Mem. in Opp'n at 13-14 [Doc. No. 31].)  In fact, in The Tile Shop's New Hire Welcome Packet, it states that "[a]ll full time Tile Shop sales representatives are classified as exempt under section 7(i) of the Fair Labor Standards Act."  (Pl.'s Mem., Ex. 4 at 1 [Doc. No. 27-1].)  Pursuant to the retail sales exemption, employees are not entitled to overtime if: (1) they are employed by a retail sales establishment; (2) more than half their total earnings in a representative period consist of commissions; and (3)

their regular rate of pay exceeds one and one-half times the applicable minimum wage. (Def.'s Mem. in Opp'n at 14 [Doc. No. 31]; 29 U.S.C. § 207(i).)

Courts throughout the country disagree about whether it is appropriate for a court to address a defendant's exemption defenses in the first or second stage of the FLSA two-step inquiry.  Compare Pelczynski v. Orange Lake Country Club, Inc., 284 F.R.D. 364, 369 (D.S.C. 2012) (denying plaintiffs' motion to conditionally certify the class based on defendant's defense that there was "likely no record of the hours [worked by proposed class members] to make the appropriate findings with any ease") with Jennings v. Cellco Partnership, 2012 WL 2568146, at *6 (granting plaintiff's motion to conditionally certify the class and holding that defendant's arguments regarding the merits of plaintiff's claims are inappropriate at this stage of the proceeding).

While Defendant correctly notes that the Eighth Circuit "has not yet ruled on whether exemption defenses should be addressed at the conditional certification stage," (Def.'s Mem. in Opp'n at 14 [Doc. No. 31]), courts in the Eighth Circuit have consistently held that merits based inquiries, including whether an FLSA exemption applies, are appropriate for the second, decertification stage of FLSA actions.  See, e.g., Simmons v. Valspar Corp., No. 10-cv-3026 (RHK/SER), 2011 WL 1363988 (D. Minn. Apr. 11, 2011), Loomis v. CUSA LLC, 257 F.R.D. 674, 678 (D. Minn. 2009), McCauley v. First Option Mortgage, LLC, No. 4:10-cv-980, 2010 WL 3522316 (E.D. Mo. Sept. 2, 2010), Pressler v. FTS USA, LLC, No. 409-cv-00676JLH, 2010 WL 1904974 (E.D. Ark. May 12, 2010).

On several occasions, this Court has held that it is inappropriate to address FLSA exemption defenses at the conditional certification stage of the proceeding.  In <u>Simmons v. Valspar Corp.</u>, the defendant opposed conditional certification of the class and argued that the plaintiffs were exempt and their exemption status "depend[ed] on an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria." No. 10-cv-3026 (RHK/SER), 2011 WL 136988, at *4 (D. Minn. Apr. 11, 2011).  The <u>Simmons</u> Court explained that conditional certification was warranted because whether or not plaintiffs were exempt pursuant to the statutory exemption was an inquiry appropriate for a decertification motion, "which [is] judged by a very different standard than the one applicable [for a motion to conditionally certify the case as a collective action]." <u>Id.</u>

Similarly, in <u>Loomis v. CUSA LLC</u>, this Court held that it would conditionally certify the class and it would not consider the defendant's merits-based FLSA exemption arguments.  257 F.R.D. 674, 678 (D. Minn. 2009).  Although the defendant contended that the Motor Carriers Act exemption excluded a certain group of plaintiffs from the class, the court explained that it would "not address the merits of this argument at this early procedural posture." <u>Id.</u> at 677.  Moreover, the court clarified that the "fact that such an inquiry will be necessary in the future does not constitute a sufficient ground to prevent putative class members from receiving notice." <u>Id.</u> at 678 (citing <u>Mowdy v. Beneto Bulk Transport</u>, No. C 06-05682, 2008 WL 901546, at *4 (N.D. Cal. Mar. 31, 2008)).

Other courts in this Circuit have also held that engaging with the merits of a defendant's exemption-based defenses is inappropriate for the conditional certification stage of FLSA proceedings.  For instance, in McCauley v. First Option Mortgage, LLC, the defendant objected to the plaintiff's motion to conditionally certify the class because the defendant claimed that members of the putative class qualified either for the FLSA commissioned salespersons exemption or for the administrative exemption.  No. 4:10-cv-980 JCH, 2010 WL 3522316, at *3 (E.D. Mo. Sept. 2, 2010).  The court held that the defendant's assertions went to the merits of the suit, and were not grounds for denying conditional certification of the class.  Id.  Similarly, in Kautsch v. Premier Communications, the court held that even if the defendant was correct in asserting that some putative class members were allegedly "excluded from overtime requirements pursuant to the Motor Carrier Exemption [...] the possible future exclusion of some technicians is not grounds for not conditionally certifying the class."  504 F. Supp. 2d 685, 690 n. 2 (W.D. Mo. 2007).  Likewise, a district court in the Eastern District of Arkansas determined that "defenses such as the executive and administrative exemptions should be addressed at the second stage of the certification process rather than at the first."  Pressler v. FTS USA, LLC, 409-cv-00676JLH, 2010 WL 1904974 at *4 (E.D. Ark. May 12, 2010) (citations omitted).

Here, Defendant contends that the Court must consider the impact of the retail sales exemption at this stage and decline to certify the class on that basis.  (Def.'s Mem. in Opp'n at 14 [Doc. No. 31].)  However, as the case law above demonstrates, it is inappropriate for the Court to consider the applicability of any FLSA exemption,

including the retail sales exemption, during the first stage of the FLSA proceedings. <u>See</u>, <u>e.g.</u>, <u>Simmons</u>, 2011 WL 1363988, at *4, <u>Loomis</u>, 257 F.R.D. at 678.  The applicability of the retail sales exemption must be individually assessed for each class member. Therefore, this type of inquiry is a factor the court must consider on a motion to *de*certify the class, once discovery is complete. <u>See</u> <u>Burch</u>, 500 F. Supp. 2d at 1186  (explaining that one of the factors a court considers on a motion to decertify a collection action is the various defenses available to the defendant that appear to be individual to each plaintiff).

Although Defendant cites a number of non-controlling cases to support its argument, all of the cases are distinguishable from the current case before the Court. Throughout its brief, Defendant relies heavily upon <u>Pelczynski v. Orange Lake Country Club, Inc.</u>, 284 F.R.D. 364 (D.S.C. 2012).  Defendant cites <u>Pelczynski</u> for the proposition that "[c]ourts deny conditional certification in cases involving the 7(i) exemption because, by its very nature, it requires fact-specific, individualized inquiries." (Def.'s Mem. in Opp'n at 14 [Doc. No. 31].)  However, as Plaintiff notes in his Response brief, <u>Pelczynski</u> does not stand for that principle.  (Pl.'s Resp. at 9-10 [Doc. No. 34].)  Instead, the <u>Pelczynski</u> Court denied the plaintiffs' motion to conditionally certify the class because (1) the Court saw no benefit to a collective action since there were too few members of the proposed class, and (2) there was "likely no record of the hours [worked by proposed class members] to make the appropriate findings with any ease." <u>Pelczynski</u>, 284 F.R.D. at 369.  In contrast, in this case, Plaintiff seeks to certify a class of up to 2,700 individuals, and the employees' pay stubs allegedly contain a complete

record of the hours worked by each employee.  (Def.'s Mem. in Opp'n at 17 [Doc. No. 31]; Compl. ¶ 17 [Doc. No. 1].)

Two other cases that Defendant relies upon, Wallace v. Norcross Associates, LLC and Clay v. Huntington Ingalls, Inc. are also inapposite to this case.  In both Wallace and Clay, the district courts denied the plaintiffs' motions for conditional certification because the plaintiffs failed to demonstrate that a common policy or practice existed and that the putative class members were similarly situated.  See Wallace v. Norcross Associates, LLC, 1:13-CV-1349-RWS, 2014 WL 1373659, at *4 (N.D. Ga. Apr. 8, 2014) (denying motion for conditional certification because the plaintiffs neither showed that defendant adopted a common policy or practice, nor proved that the putative class members were similarly situated because the class members were compensated in different ways); Clay v. Huntington Ingalls, Inc., 2011 Lexis 155351, at *24-25, 32, 36 (E.D. La. Sept. 29, 2011) (denying motion for conditional certification because "[a] substantial amount of discovery ha[d] already been conducted" and the discovery reflected that the plaintiffs failed to demonstrate that a general or common policy or practice existed for two of plaintiffs' claims, and "the occurrence of any violations [was] too sporadic and irregular to support certification" for plaintiffs' final claim).

In contrast, here, Defendant does not disagree with Chin that the putative class members are similarly situated.  Furthermore, Chin clearly demonstrates that a common policy or practice exists by alleging that the uniform, national compensation structure for all Sales Associates and Assistant Store Managers is responsible for putative class members not being paid minimum wage or overtime.  (Pl.'s Mem., Ex. 5 [Doc. No. 28].)

In fact, as Plaintiff correctly notes, "one court recently found that the fact that the defendant claimed the employees at issue were covered by the retail sales exemption <u>favored</u> conditional certification because it showed a common policy to deny the employees overtime when they worked more than 40 hours per week." (Pl.'s Resp. at 9 (citing <u>Long v. CPI Sec. Systems, Inc.</u>, 292 F.R.D. 296, 304 (W.D.N.C. May 17, 2013)) [Doc. No. 34].)

Finally, two other cases that Defendant relies upon are second stage decertification cases, which are irrelevant to the Court's conditional certification inquiry. (Def.'s Mem. in Opp'n at 16-17 (citing <u>Beauperthuy v. 24 Hour Fitness USA, Inc.</u>, 772 F. Supp. 2d 1111 (N.D. Cal. 2011); <u>Johnson v. TGF Precision Haircutters, Inc.</u>, No. Civ. A. H-03-3641, 2005 WL 1994286 (S.D. Tex. Aug. 17, 2005)) [Doc. No. 31].) Plaintiff correctly explains that "[t]hose [two] cases actually support conditional certification here because those respective courts conditionally certified the cases despite the assertion of the retail sales exemption defense." (Pl.'s Resp. at 10 (citing <u>Beauperthuy v. 24 Hour Fitness USA, Inc.</u>, 2007 WL 707475 (N.D. Cal. Mar. 6, 2007) (granting plaintiffs' motion to conditionally certify class of managers); <u>Beauperthuy v. 24 Hour Fitness USA, Inc.</u>, 2008 WL 793838 (N.D. Cal. March 24, 2008) (granting plaintiffs' motion to conditionally certify class of personal trainers), <u>Johnson v. TGF Precision Haircutters, Inc.</u>, 319 F. Supp. 2d 753, 755 (S.D. Tex. 2004) (granting plaintiffs' motion to conditionally certify class of current and former stylists and receptionists) [Doc. No. 34].) In fact, in one of the cases Defendant cites, the court explained that it would consider "whether the defendant asserts defenses that would require individualized proof," including the retail

sales exemption set forth in section 7(i) of the FLSA, *only* during the decertification stage of the proceeding.  Beauperthuy, 772 F. Supp. 2d at 1125-26.  Thus, even the cases that Defendant relies upon support the Court's conclusion that it need not address Defendant's section 7(i) defenses on Plaintiff's Motion for FLSA Conditional Certification.

The Court notes that in some cases, where there has already been extensive discovery, courts address exemption defenses raised by a defendant during the initial stage of FLSA proceedings.  See Ray, 1996 WL 938231, at *4 (applying the more stringent standard at the initial stage because "the facts before the Court are extensive [and] there is no need for discovery in order to reach a determination"); see also White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1313 n.2 (M.D. Ala. 2002) (stating that because the plaintiff conducted "extensive" discovery, "the court deems it necessary to carefully consider the submissions of the parties with respect to the class allegations"); Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497-98 (D.N.J. 2000) (applying the stricter standard because 141 potential plaintiffs had already filed consent forms to join the lawsuit and discovery was complete prior to the plaintiff filing a motion to certify the class).  However, extensive discovery has not taken place in this case.  Therefore, "the circumstances of this case do not warrant imposition of the more stringent standard at this stage."  In re RBC Dain Rauscher Overtime Litigation, 703 F. Supp. 2d 910, 964 (D. Minn. 2010) (granting the plaintiff's motion to conditionally certify the class, despite the fact that "the parties have conducted some discovery" since "the discovery process [was] not yet complete").  In sum, at this stage of the litigation, the Court finds that it need not address Defendant's argument about the retail sales exemption.

## 2.  Aggrieved Parties

Defendant also contends certification is inappropriate because Plaintiff and the opt-ins are not injured or aggrieved under the FLSA.  (Def.'s Mem. in Opp'n at 18 [Doc. No. 31].)  Defendant argues that the putative class members allegedly earned more than $10.88 per hour (one and one-half times minimum wage) on an annual basis.  (Id. at 21.) Thus, The Tile Shop asserts that Chin and the opt-ins are not injured under the FLSA because (1) their hourly rate was always above minimum wage, and (2) their regular rate of pay exceeded one and one-half times the minimum wage; and consequently, they are not entitled to overtime pursuant to the retail sales exemption.  (Id. at 18-21; 29 U.S.C. § 207(i).)  Plaintiff, of course, disagrees.  (Pl.'s Resp. at 12 [Doc. No. 34].)

The Tile Shop and Chin use different calculation methods to determine the employees' hourly rates.  Chin alleges that Defendant failed to pay him, and other putative class members, minimum wage and overtime based on a weekly calculation of earned wages.  Plaintiff relies on 29 C.F.R. § 778.104, which states that the FLSA "takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks."  Therefore, in order to calculate time spent and salary earned, Plaintiff contends that the Court can simply "divide [the putative class members'] pay by their hours and make a week by week determination on whether these people qualify for the 7(i) exemption or not."  (Hr'g Tr. 13.)

Defendant claims that the Court should utilize a different formula to determine if the retail sales exemption applies.  Pursuant to 29 C.F.R. § 778.120, "[i]f it is not possible or practicable to allocate the commission among the workweeks of the period in

proportion to the amount of commission actually earned or reasonably presumed to be earned each week, some other reasonable and equitable method must be adopted."  Since Sales Associates and Assistant Store Managers receive commission on a deferred basis, (Randazzo Aff. ¶¶ 3, 15 [Doc. No. 31]), Defendant argues that it is not possible to allocate the commission presumed to be earned each week (Def.'s Mem. in Opp'n at 18 [Doc. No. 31]).  Accordingly, The Tile Shop contends that "the only reasonable way to evaluate compliance with the retail sales exemption is to calculate an employee's hourly rate by dividing their total annual earnings by the total hours they worked in a year, given the length of time over which commissions are earned."  (Def.'s Mem. in Opp'n at 20 [Doc. No. 31].)  Once the average annual hourly rate is calculated, Defendant claims that it is clear that "Plaintiff and the opt-ins always earned more than $10.88 per hour." (Id. at 21.)  As a result, The Tile Shop asserts that Plaintiff and the opt-ins are not aggrieved because (1) each employee's hourly rate exceeded minimum wage, (id.); and (2) they are not entitled to overtime under the retail sales exemption since their annual hourly rate exceeded one and one-half times the minimum wage (id. at 18-21; 29 U.S.C. § 207(i)).

The Court finds that it need not address Defendant's concern at this stage of the proceeding for two reasons.  First, Defendant's argument hinges on the applicability of the retail sales exemption based on individualized inquiries of earning reports.  And as detailed above, "Defendant's arguments concerning the individualized inquiries required and the merits of [Plaintiff's] claims are inappropriate at this stage of the proceeding.  These arguments can be raised before the Court at the second, or decertification stage."

Jennings, 2012 WL 2568146, at *6.  Thus, for the same reasons as articulated in Section

II(C)(1), the Court need not address this defense at this stage.

The Court may also disregard Defendant's argument because a more detailed

record is required to determine what hourly rate formula is appropriate in this case.

According to 29 C.F.R. § 778.120, the Court may choose not to use a single workweek as

its standard to calculate an employee's hourly rate of pay "[i]f it is not possible or

practicable to allocate the commission among the workweeks of the period in proportion

to the amount of commission actually earned or reasonably presumed to be earned each

week."  However, in order to determine whether it is impossible or impracticable to

allocate the commission earned, the Court requires a more developed record.  (Hr'g Tr.

16.)  Plaintiff contends that it is possible to allocate the commission because The Tile

Shop's pay stubs "tracks the employees' time and defines when they earn their

commissions."  (Pl.'s Resp. at 13 [Doc. No. 34].)  Thus, Defendant's records may indeed

"reflect the specific week in which [each employee] earned [his or] her commission."

Morse v. Equity Lifestyle Properties Inc., No. 2:13-CV-00408-JMS, 2014 WL 1764927

(S.D. Ind. Apr. 30, 2014) (holding that § 778.120 does not apply because the defendant

kept records which make it possible to allocate commission among workweeks).

Without a complete record post-discovery, the Court cannot conclude definitively

which hourly rate accounting method is appropriate in this case.  As the court explained

in Thompson v. Direct General Consumer Products, Inc., "it may turn out that

[Plaintiff's] theory is wrong as a legal matter – because, for example, the Court ultimately

decides [that] the FLSA allows [Defendant] to dilute the denominator in the regular-rate-

of-pay calculation by [using an annual accounting method]."  No. 3:12-cv-1093, 2014 WL 884494, at *4 (M.D. Tenn. Mar. 5, 2014) (granting, in part, plaintiffs' motion to conditionally certify the collective action and holding that discovery must be complete in order to determine if 29 C.F.R. § 778.119 requires the court to use a different formula to determine the hourly rate of pay).

Or, the record may indicate that the retail sales exemption does not apply because the pat stub evidence may be sufficient to conclude that Plaintiff and the opt-ins were *not* paid "more than $10.88 per hour for all weeks in which [they] worked more than forty hours."  Owopetu v. Nationwide CATV Auditing Servs., Inc., No. 5:1O-cv-18, 2011 WL 883703, at *11 (D. Vt. Mar. 11, 2011) (denying defendant's motion for summary judgment and rejecting defendant's argument that the rate of pay should be calculated based on plaintiffs' aggregate hours worked and compensation earned; and furthermore, finding that the retail sales exemption did not apply in the weeks in which the plaintiff earned less than $10.88 per hour).  However, that determination is "best saved for another day, when discovery is complete and the chips, as they say, have fallen where they may." Thompson, 2014 WL 884494, at *4.  Determining which calculation method to use to determine Plaintiff's and the opt-ins' "regular rate of pay" is a merits-based inquiry that is inappropriate for the conditional certification stage and requires additional discovery. [4]

---

[4]     The procedural posture of the three main cases Defendant relies upon support the Court's conclusion that further discovery is required to address which accounting method is appropriate pursuant to the FLSA regulations.  (See Def.'s Mem. in Opp'n at 18-20 (citing Schwind v. EW & Associates, Inc., 371 F. Supp. 2d 560 (S.D.N.Y. 2005); Walton v. United Consumers Club, Inc., 786 F.2d 303, 312 (7th Cir. 1986); Nascembeni v. Quayside Place Partners, LLP, No. 09-cv-23322, 2010 Lexis 58707 (S.D. Fla. May 23,

As such, the Court disagrees with Defendant that Plaintiff has failed to demonstrate that he and the opt-ins are injured under the FLSA.

### 3.  Interest in Lawsuit

In addition to arguing that conditional certification is inappropriate because Plaintiff and the opt-ins are subject to the retail sales exemption, Defendant also claims that conditional certification is inappropriate because putative class members are not sufficiently interested in this lawsuit.  (Def.'s Mem. in Opp'n at 21 [Doc. No. 31].)  The Tile Shop contends that the fact that only Plaintiff and four other individuals opted into the case over a period of six months is indicative of lack of interest.  (Id. at 22.)  The Court disagrees.

The Court notes that district courts within the Eighth Circuit differ as to whether and by what means a plaintiff must demonstrate interest in the proposed collective action. See, e.g., Ford v. Townsends of Ark., Inc., No. 4:08-cv-00598 BSM, 2010 WL 1433455, *5 (E.D. Ark. Apr. 9, 2010) (no showing required); Musticchi v. Little Rock, No. 4:08-cv00419 SWW (E.D. Ark. Feb. 2, 2009) (showing required); Robinson v. Tyson Foods, Inc., 254 F.R.D. 97 (S.D. Iowa 2008) (showing required); Kautsch v. Premier Communications, 504 F.Supp.2d 685 (W.D. Mo. 2007) (no showing required). Nonetheless, this Court has consistently held that a plaintiff must demonstrate some interest from others who are similarly situated.  According to Parker v. Rowland Express,

_____

2007) [Doc. No. 31].)  For example, both Schwind and Nascembeni were decided on motions for summary judgment, after full discovery was completed.  See Schwind, 371 F. Supp. 2d at 562; Nascembeni, 2010 Lexis 58707, at *9.  And the Seventh Circuit decided Walton after complete discovery had also been completed and the lower court had held a bench trial in the case.  See Walton, 786 F.2d at 312.

25

Inc., "[a] FLSA plaintiff is not entitled to conditional certification simply to seek out others who might wish to join the action."  492 F. Supp. 2d 1159, 1166 (D. Minn. 2007). Moreover, "in order for a case to be appropriate for collective-action status under the FLSA, the Court must be satisfied that there are other employees who desire to opt in." Lyons v. Ameriprise Fin., Inc., No. 10-cv-503 (RHK/JJK), 2010 WL 3733565, at *4 (D. Minn. Sept. 20, 2010) (citing Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991); Parker, 492 F. Supp. 2d at 1164–65).

However, the plaintiff's burden to demonstrate interest is not particularly onerous. In Lyons, this Court explained that "[t]he existence of more than one or two plaintiffs in a FLSA case at the time of the conditional-certification inquiry has been found sufficient to warrant collective-action treatment, even without a showing that other individuals wish to opt-in." Lyons, 2010 WL 3733565, at *4 (citing In re RBC Dain Rausher Overtime Litigation, No. 06-cv-3093 (JRT/FLN), 2010 WL 1324938, at *54 (D. Minn. Mar. 31, 2010) (certifying a FLSA collective action where ten former employees had joined the suit)).  Moreover, courts in this District and the Eighth Circuit have not required a threshold percentage of opt-ins for conditional certification.  See, e.g., Bilskey v. Bluff City Ice, Inc., No. 1:13-cv-62 (SNLJ), 2014 WL 320568, at *3 (E.D. Mo. Jan. 29, 2014) (finding that "there is no threshold number of opt-in plaintiffs required for conditional certification").

Here, Plaintiff has demonstrated sufficient interest in this lawsuit.  Lyons, 2010 WL 3733565, at *4; Parker, 492 F. Supp. 2d at 1166.  In Lyons, this Court conditionally certified a FLSA collective action with one named plaintiff and only nine opt-in

employees.  2010 WL 3733565, at *4.  In this case, four additional employees have

opted-in to Plaintiff's suit after only six months of litigation.  (Pl.'s Mem., Ex. 2 [Doc.

No. 26-2].)  Defendant claims that Plaintiff has failed to show sufficient interest in this

lawsuit because a miniscule percentage of the 2,700 putative class members have joined

the suit.  (Hr'g Tr. 8.)  However, "there is no threshold number of opt-in plaintiffs

required for conditional certification."  Bilskey, 2014 WL 320568, at *3.

In Ahle v. Veracity Research Co., the court granted a motion to conditionally

certify a collective action and discussed the defendant's concern about the lack of interest

by putative class members.  No. 09-cv-00042 (ADM/RLE), 2009 WL 3103852, at *5 (D.

Minn. Sept. 23, 2009).  Nineteen putative class members had joined the three named

plaintiffs as of the date of the court's order.  Id.  Although the defendant claimed that this

was a small percentage of the potential class of 500 individuals, the court concluded it

was "not persuaded that conditional certification should be denied due to a lack of

interest."  Id.  The court noted that once the class notice was issued, it "will perhaps be in

a better position to gauge interest."  Id.  Here, the Court similarly finds that based on the

record currently before it, lack of interest is not evident.  However, the court notes that

once class notice is issued, it may need to re-gauge interest on a future motion for

decertification.  Accordingly, the Court finds that enough interest has been demonstrated

to certify the class conditionally.

During the hearing, Defense counsel cited two Eastern District of Arkansas cases,

Collins v. Barney's Barn, Inc. and Butcher v. Delta Memorial Hospital, which he claimed

"address the issue of what…record evidence is… necessary to sustain a conditional

certification determination based upon interest." (Hr'g Tr. 9.)  Although neither of these cases are controlling, the Court entertains Defense counsel's argument.  In <u>Collins</u>, the court found that the plaintiffs failed to demonstrate sufficient interest in the lawsuit because no one had opted-in and "no specific information regarding similarly-situated potential plaintiffs who desire to join a collective action" was provided.  No. 4:12-cv-00685 (SWW), 2013 WL 1668984, at *4 (E.D. Ark. Apr. 17, 2013).  The plaintiff merely alleged in an affidavit that she knew that there are others "who used to work or still work for [the employer] that are being treated the same way." <u>Id.</u>  Similarly, in <u>Butcher</u>, the court denied class certification because no other similarly situated employees had opted-into the suit and there was no "testimony indicating that other past or current employees have an interest in joining this lawsuit."  No. 5:12-cv-00241 (SWW), 2013 WL 1668998, at *4 (E.D. Ark. Apr. 17, 2013).  In contrast to the absence of interest in <u>Collins</u> and <u>Butcher</u>, here, four additional employees have already opted-in, and Plaintiff alleges that additional employees will likely join once notice is provided.  (<u>See</u> Hr'g Tr. 21.)  Thus, <u>Collins</u> and <u>Butcher</u> are inapposite to the Court's conclusion in this case.

Chin's case is easily distinguishable from <u>Parker v. Rowland Express, Inc.</u>, in which this Court held that the plaintiffs failed to show sufficient interest. <u>See</u> 492 F. Supp. 2d 1159, 1163 (D. Minn. 2007).  In <u>Parker</u>, the plaintiffs proffered their own affidavits, "in which they state[d] that they are 'informed and believe' that other drivers worked in excess of 40 hours per week and did not receive overtime compensation." <u>Id.</u> But no additional employees had actually opted-into the lawsuit. <u>Id.</u>  The court explained that because one of the plaintiffs had worked for the employer for five years it was "not

unreasonable to require Plaintiffs to submit evidence of additional drivers who desire to join this litigation" before granting conditional certification.  Id. at 1166-67.  However, the Court noted that "[i]t is conceivable that in certain circumstances, such as when an employee worked for an employer for only a short period of time, it might be appropriate to permit some discovery as to the identity of other similarly situated employees."  Id. at 1167 n.6.

Unlike in Parker, here, four additional employees have already opted-in.  (Pl.'s Mem., Ex. 2 [Doc. No. 26-2].)  Furthermore, Chin worked at The Tile Shop for only six months.  (Compl. ¶ 4 [Doc. No. 1].)  Thus, it is conceivable that he did not know all of his co-workers at the Sterling, Virgina store location, and it is almost a certainty that he was unfamiliar with the employees who worked at The Tile Shop nationwide.  Therefore, the Court notes that it is appropriate to permit some discovery about the identity of similarly situated employees who worked with Plaintiff and those who worked at stores across the country.  See Parker, 492 F. Supp. 2d at 1167 n.6.[5]

---

[5]     Defendant cites an additional case, Thompson v. Speedway SuperAmerica LLC, in support of its argument that Plaintiff failed to show sufficient interest.  (Def.'s Mem. in Opp'n at 22 [Doc. No. 31].)  Thompson is not only distinguishable from this case, but it also does not support Defendant's claim that courts deny conditional certification unless a plaintiff can show sufficient interest in joining the litigation.  In Thompson, the court denied conditional certification of a collective action not because of insufficient interest in the litigation, but because the Plaintiff failed to present evidence of a "common policy or plan" that resulted in a FLSA violation.  No. 08-cv-1107 (PJS/RLE), 2009 WL 130069, at *8 (D. Minn. Jan. 20, 2009).  In contrast, here there is "cogent evidence" of a common policy or plan – the nationwide pay plans for Sales Associates and Assistant Store Managers – which allegedly resulted in FLSA violations.  Id. at *13.

### 4.  Manageability of Collective Action

Defendant's final argument in opposition to Plaintiff's Motion for Conditional Certification is that a trial with 2,700 class members, who each require an individualized inquiry, is unmanageable; and thus, certification is inappropriate.  (Def.'s Mem. in Opp'n at 17 [Doc. No. 31].)  When "determining whether a class may be properly managed as a collective action, the Court must look to factual similarities or differences among the proposed class members."  Simmons v. Valspar Corp., No. 10-cv-3026 (RHK/SER), 2011 WL 1363988, at *5 (D. Minn. Apr. 11, 2011).  This is because the main inquiry for a court at the conditional certification stage is whether the putative class members are similarly situated.  Brennan, 2008 WL 819773, at *3.  A class is not necessarily unmanageable simply because the defendant is a large, nationwide employer.  Thompson, 2009 WL 130069, at *13.  Instead, the Court must focus on whether Plaintiff demonstrated "homogeneity in alleged FLSA violations" among the putative class members.  Id.

In Simmons v. Valspar Corp. this Court used the factual similarities standard to determine manageability, and granted conditional certification of the class because "[t]he salient factual allegations among the Plaintiffs [were] sufficiently similar for collective treatment."  Simmons, 2011 WL 1363988, at *5.  Specifically, "although Plaintiffs worked in different regions across the country and under different managers, they all [made] the same allegations about the nature of their job responsibilities, the fact they regularly worked more than 40-hour weeks, their classification as exempt, and the policies they were required to follow in reporting their work hours."  Id.  The court did

not find that the class was unmanageable because it may later need to conduct individualized inquiries into the number of hours each class member worked and the wages that each class member earned.

Similarly, in Long v. CPI Security Systems, Inc., the district court explained that the defendant's class manageability argument, which emphasized the need for individualized inquiries for each class member, was "more appropriate at the motion to decertify phase." 292 F.R.D. 296, 303 (W.D.N.C. May 17, 2013) (finding that the putative class members are similarly situated with regard to the defendant's policy and practice of treating them as uniformly exempt under the FLSA's "retail sales exemption").

Here, Defendant explains that it is "the nature of the retail sales exemption [that] creates huge manageability issues for this Court." (Hr'g Tr. 4.) Defendant contends that "[a]t trial, the parties would need to review hundreds of thousands of pages of time records to discern whether the [retail sales] exemption applies to each individual plaintiff, when the exemption applies, and whether damages, if any, exist." (Def.'s Mem. in Opp'n at 17 [Doc. No. 31].) During the hearing, Defense counsel further explained that this case is unmanageable because of "the unique manner in which the Plaintiff and the putative class are paid, when they're paid, how dramatically the commissions differ between the individuals, the bonuses differ, when they're paid, and over what period of time..." (Hr'g Tr. 5.)

Based on the case law detailed above, the Court finds that denying conditional certification simply because the Court may need to make individualized inquiries in the

future is inappropriate.  Chin's allegations about the nature of Assistant Store Managers'

and Sales Associates' job responsibilities, the fact that they worked more than 40-hour

weeks but were not paid overtime, their misclassification as exempt, and The Tile Shop's

failure to pay these employees minimum wage, are similar to the plaintiffs' allegations in

Long and Simmons.  Long, 292 F.R.D. at 303; Simmons, 2011 WL 1363988, at *5.

Therefore, the Court finds that the alleged factual similarities among the proposed class

members indicate that the class may be properly managed as a collective action.  The

Court reiterates that the possibility that it may need to make individual inquiries is a

concern more appropriately addressed at the decertification stage.  Burch, 500 F. Supp.

2d at 1186; Long, 292 F.R.D. at 303.[6]  Furthermore, simply because a significant number

of potential putative class members exist – 2,700 – that is not enough for the Court to

determine that the class is unmanageable.  See Thompson, 2009 WL 130069, at *13.

Insofar as Defendant's manageability argument rests on the applicability of section

7(i), the Court's conclusion remains the same.  As described in detail above, the

applicability of the retail sales exemption is a merits based inquiry that is appropriate

during the second, decertification stage, of the FLSA proceeding.  Jennings, 2012 WL

---

[6]     Defendant avers that Plaintiff's case is similar to Clay and Saleen; and thus,
Chin's motion should be denied because the class is unmanageable.  However, unlike the
plaintiffs' claims in Clay v. Huntington Ingalls, Inc. or Saleen v. Waste Management,
Inc., a common policy or practice underlies Chin's claims.  Clay, 2011 Lexis 155351, at
*25-26 (denying conditional certification of collective action because plaintiffs failed to
demonstrate proof of general or common policy that affected all putative class members);
Saleen, 649 F. Supp. 2d 937, 942 (D. Minn. 2009) (denying conditional certification
because "Plaintiffs have no direct evidence of an unlawful policy that applies to all [the
putative class members], but instead ask the Court to infer the existence of such a policy
from the fact that a tiny fraction of WMI workers allege that they were not paid for
working through meal breaks").

2568146, at *6 (finding that "[d]efendant's arguments concerning individualized inquiries required and the merits of Plaintiffs' claims are inappropriate at this [conditional certification] stage of the proceeding").

### D. Judicial Notice

District courts have discretion in appropriate cases to implement 29 U.S.C. § 216(b) by facilitating notice to potential plaintiffs. Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989). "Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." Id. at 171. "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner." Id. at 172. "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Id.

The Court exercises its discretion to facilitate notice in this case. Court-facilitated notice is necessary in order to prevent the expiration of claims based on the running of the statute of limitations and because of the size of the class. The Court approves the proposed Judicial Notice provided by Plaintiff and the 90–day opt-in period. Plaintiff's counsel may send the Judicial Notice to putative class members by mail. Defendant is required to post the Judicial Notice in all break and lunch rooms at its nationwide

locations.  Plaintiff's counsel may also send one reminder letter during this 90-day notice

period with the following language added to the proposed letter provided by Plaintiff:

"This Notice Serves to Notify You of This Pending Lawsuit. The Court Does Not

Encourage or Discourage Participation In This Case."

### E.  Production of List of Employees

The Court grants Plaintiff's request for Defendant to produce – within 10 days

from the date of this Order – an electronic list of (1) all Sales Associates employed by

Defendant nationwide from October 27, 2011, to the present, and (2) all Assistant Store

Managers employed by Defendant nationwide from October 27, 2011, until December 31,

2011.  These two lists shall include each employee's first and last names, last known

address, and dates of employment.  If, however, the Notice sent by Plaintiff's counsel is

returned to them by mail as undeliverable, Defendant, within five days of written notice

by Plaintiff's counsel, shall provide for any such putative class member their most recent

telephone number and date of birth.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for FLSA Conditional Certification and Judicial Notice [Doc. No. 23] is **GRANTED**, and this matter is conditionally certified as a collective action; and

2. Plaintiff's proposed Notice form [Doc. No. 28-1] is **APPROVED** provided that Plaintiff corrects the misspelling of Cristopher Chin's last name in the "Description of the Lawsuit" section of the Notice.  The Court authorizes Plaintiff's counsel to mail such Notice to the putative class members identified in the list provided by Defendant.  The Notice shall provide for a 90 day opt-in period; and

3. Defendant is ordered to post the Notice in all break and lunch rooms at nationwide locations where Defendant employs putative class members.

4.  Plaintiff's counsel is authorized to re-mail the Notice one time during the 90 day opt-in period to the putative class members who have not yet opted in as of the date of the re-mailing.

5.  Defendant must provide Plaintiff's counsel with a list of all Sales Associates employed nationwide from October 27, 2011, to the present, and all Assistant Store Managers employed nationwide from October 27, 2011, until December 31, 2011.  This list shall comply with the following requirements:
    a.  Each employee's listing shall include his or her full name, address, and dates of employment;
    b.  The list shall be in electronic and importable format;
    c.  Defendant must produce this list within 10 days of this Order; and
    d.  If the Notice sent by Plaintiff's counsel is returned as undeliverable, Defendant shall provide to Plaintiff's Counsel each such putative class member's most recent telephone number and date of birth within five days of written notice from Plaintiff's counsel.

Dated:  October 27, 2014                    s/Susan Richard Nelson_____
                                            SUSAN RICHARD NELSON
                                            United States District Judge